UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

NOEL DIAZ,                                          :
      Plaintiff,                                :
                                                :
      v.                                        :     Case No. 3:20cv1074 (VAB)
                                                :
REVEREND DR. WILLIAMS, ET AL.,                     :
      Defendants.                               :

**INITIAL REVIEW ORDER**

Plaintiff, Noel Diaz ("Mr. Diaz"), is currently incarcerated at Northern Correctional

Institution ("NCI") in Somers, Connecticut. He has filed a civil rights Complaint *pro se* under 42

U.S.C. § 1983, claiming that during his confinement at NCI and Garner Correctional Institution

("GCI"),  Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Warden Hanna,

Deputy Warden John Doe, Commissioner John Doe, Deputy Commissioner John Doe, Grievance

Coordinator John Doe, NCI, and Grievance Coordinator Jane Doe, GCI, deprived him of items

that he requires to practice of his religion.

For the reasons set forth below, the Complaint is **DISMISSED** in part.

**I.      BACKGROUND**

Mr. Diaz allegedly is an adherent of the Santeria religion. Compl., ECF No. 1, at 7 ¶ 5. In

January 2020, Mr. Diaz allegedly was confined at NCI. *Id.* at 6 ¶ 1. On January 28, 2020, Mr.

Diaz allegedly completed a Purchase of Religious Items Not Sold in the Commissary form and

sent it to Reverend Dr. Williams. *Id.*; Exs., ECF No. 1, at 9. Mr. Diaz allegedly sought approval

to purchase the following items that he claimed he needed to practice his religion: a multi-

colored beaded necklace, twenty Panamanian cigars, four plastic altars, twenty wooden or plastic

statues of saints, laminated portraits of orishas and saints, twenty natural and essential oils,

coconuts, coconut water, falcon feathers, and a white robe. *Id.*

On January 29, 2020, Reverend Dr. Williams allegedly sent Mr. Diaz a written response to his request. *Id.* at 6 ¶ 1; Exs., ECF No. 1, at 10. Reverend Dr. Williams allegedly denied the requests for cigars, a robe, and coconuts for safety and security reasons, denied the request for falcon feathers because possession of falcon feathers was illegal, and granted the requests for a beaded necklace, but only a white beaded necklace. *Id.* Reverend Dr. Williams allegedly indicated that Mr. Diaz had not clearly articulated his need for the other items listed in the request. *Id.*

On February 3, 2020, Mr. Diaz allegedly sent Reverend Dr. Williams and Inmate Request asking him to reconsider his requests for religious items that he needed to appeal to the orishas and saints of his religion and perform various rituals. *Id.* at 6 ¶ 1; Exs., ECF No. 1, at 11-12. Mr. Diaz allegedly explained that he would not be able to wear a necklace of white beads until he could perform his religious purification ritual with the proper religious articles. *Id.* In addition, to the items that he had included in his original request, Mr. Diaz allegedly asked for approval of African drum music to use to call upon the orishas and a bucket to bathe in. *Id.* Mr. Diaz allegedly received no response to the February 3, 2020 Inmate Request. *Id.* at 6 ¶ 2. Mr. Diaz allegedly also spoke to Warden Bowles and Deputy Warden Baymon regarding his need for items to practice his religion, to "no avail." *Id.*

On February 23, 2020, Mr. Diaz allegedly filed a Level 1 grievance regarding the refusal of Reverend Dr. Williams to approve his requests for religious items. *Id.* at 6 ¶ 2; Exs., ECF No. 1, at 13-14. He allegedly received no response to this grievance. *Id.* On or before March 8, 2020, prison officials at NCI allegedly transferred Mr. Diaz to GCI. *Id.* at 6 ¶ 2; Exs., ECF No. 1, at 17.

On March 8, 2020, Mr. Diaz allegedly sent an Inmate Request to Warden Hanna and

Deputy Warden John Doe asking them to check into the grievance that he had filed at NCI regarding his need for various religious items in order to practice his Santeria religion. *Id.* at 6 ¶¶ 2-3; Exs., ECF No. 1, at 17. Mr. Diaz allegedly also spoke to Warden Hanna and Deputy Warden John Doe on multiple occasions regarding his need for various religious items in order to practice his religion at GCI. *Id.* at 6 ¶ 3. Both Warden and Deputy Warden John Doe allegedly informed Mr. Diaz that they would address his requests when they had time and asked him to be patient. *Id.*

On March 29, 2020, Mr. Diaz allegedly filed a Level 1 grievance because Warden Hanna and Deputy Warden John Doe had not responded to his Inmate Request about needed religious items. *Id.* at 6 ¶ 4; Exs., ECF No. 1, at 18-19. Mr. Diaz allegedly did not receive a response to this Level 1 grievance. *Id.* On April 8, 2020, Mr. Diaz allegedly filed a Level 2 appeal of the failure of Warden Bowles and Deputy Warden Baymon to respond to his Level 1 grievance filed on February 3, 2020 at NCI. *Id.* at 6 ¶ 2; Exs., ECF No. 1, at 15. He allegedly did not receive a response to that Level 2 appeal. *Id.* On May 25, 2020, Mr. Diaz allegedly filed a Level 3 appeal of the failure to prison officials to respond to his April 8, 2020 Level 2 appeal. *Id.* at 6 ¶ 2; Exs., ECF No. 1, at 16. Mr. Diaz allegedly received no response to this Level 3 appeal. *Id.*

On May 14, 2020, Mr. Diaz allegedly filed a Level 2 appeal of the failure of Warden Hanna and Deputy Warden John Doe to respond to his Level 1 grievance filed on March 29, 2020 at GCI. *Id.* at 6 ¶¶ 3-4; Exs., ECF No. 1, at 20. Mr. Diaz allegedly did not receive a response to that Level 2 appeal. *Id.* On June 29, 2020, Mr. Diaz allegedly filed a Level 3 appeal of the failure to prison officials to respond to his May 14, 2020 Level 2 appeal. *Id.* at 6 ¶¶ 3-4; Exs., ECF No. 1, at 21.

3

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Mr. Diaz asserts a First Amendment free exercise and a Fourteenth Amendment equal protection claim against Defendants Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Warden Hanna, Deputy Warden John Doe, Commissioner John Doe, and Deputy Commissioner John Doe and a Fourteenth Amendment due process claim against Defendants Grievance Coordinator John Doe, NCI, and Grievance Coordinator John Doe, GCI.

Mr. Diaz seeks compensatory and punitive damages and injunctive relief in the form of an order that Defendants Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon,

Warden Hanna, Deputy Warden John Doe, Commissioner John Doe, and Deputy Commissioner John Doe provide him with a shower every night before practicing his religion and a single cell to practice his religion in private and that the Defendants permit him to purchase a white robe, a bath bucket, an altar, fresh fruits, statutes of saints, laminated pictures of saints, an orishas necklace made up of multi-colored beads, natural herbs, bird feathers, and the opportunity to burn cigars and natural herbs. Compl. at 7 ¶¶ 7-10.

### A.      The Exhaustion of Administrative Remedies Requirement – GCI Claims

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 136 S. Ct.

1850, 1858 (2016).

Although failure to exhaust administrative remedies is an affirmative defense, a "district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing *Jones v. Bock*, 549 U.S. 199, 125 (2007)). The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf. Each request for administrative remedy must be submitted on a separate form and the request and action sought must be stated in a clear and simple manner. *See id.* at 9.6(5)(E)(2) & (3).

An inmate must first attempt to resolve the matter informally. The inmate may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form, CN 9601, and send that form to the appropriate staff member. *See id.* If an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within

thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, either a denial or rejection, or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). A Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M). Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 appeals to which there has been an untimely response, or no response, by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within thirty-five days of the filing of the Level 2 appeal. *See id.* at 9.6(6)(M). A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee with a response provided within thirty business days of receipt of the Level 3 appeal. *See id.* at 9.6(6)(L).

Mr. Diaz alleges that he exhausted his administrative remedies as to his First and

Fourteenth Amendment claims asserted against all Defendants by filing Inmate Requests, Level 1 grievances, Level 2 appeals at both NCI and GCI. Compl. at 6-7, 11-21. From the date of the filing of his Level 3 appeal of the alleged refusal of Warden Hanna, Deputy Warden John Doe, and Reverend Dr. Williams to provide him with the religious items and white robe that he needed to practice his Santeria religion at GCI from March to July 2020, Mr. Diaz did not timely exhaust his available administrative remedies before filing this action.

On March 8, 2020, after his transfer to GCI, Mr. Diaz sent an Inmate Request to Warden Hanna and Deputy Warden John Doe asking them to check into the grievance that he had filed at NCI regarding his need for various religious items in order to practice his Santeria religion. Compl. at 6 ¶¶ 2-3; Exs., ECF No. 1, at 17. On March 29, 2020, Mr. Diaz filed a Level 1 grievance because Warden Hanna and Deputy Warden John Doe had not responded to his Inmate Request about needed religious items. *Id.* at 6 ¶ 4; Exs., ECF No. 1, at 18-19. On May 14, 2020, Mr. Diaz filed a Level 2 appeal of the failure of Warden Hanna and Deputy Warden John Doe to respond to his Level 1 grievance filed on March 29, 2020 at GCI. *Id.* at 6 ¶¶ 3-4; Exs., ECF No. 1, at 20. On June 29, 2020, Mr. Diaz filed a Level 3 appeal of the failure to prison officials to respond to his May 14, 2020 Level 2 appeal. *Id.* at 6 ¶¶ 3-4; Exs., ECF No. 1, at 21.

Under State of Connecticut Department of Correction Administrative Directive 9.6, the Commissioner of Correction or his or her designee reviews a Level 3 appeal and is required to provide a response provided within thirty *business days* of receipt of the Level 3 appeal. *See* Admin. Dir. 9.6(6)(L) (emphasis added). Thus, the Commissioner of Correction or his designee was required to file a response to Mr. Diaz's Level 3 appeal by August 10, 2020. Mr. Diaz filed this action on July 28, 2020, before the time for filing a response to the Level 3 appeal

had expired. *id.* at 9.6(6)(L).

The Court concludes that, on the present record, Mr. Diaz did not properly exhaust his available remedies under Administrative Directive 9.6 as to his claim that Warden Hanna, Deputy Warden John Doe, Reverend Dr. Williams, Commissioner of Correction John Doe and Deputy Commissioner of Correction John Doe violated his First Amendment right to the free exercise of religion and his Fourteenth Amendment right to equal protection of the laws during his confinement at GCI from March through July 2020, prior to filing this action. *See Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements.") (quoting *Woodford*, 548 U.S. at 83-84).

Accordingly, the First and Fourteenth Amendment claims, as asserted against Defendants Hanna, Deputy Warden Doe, Reverend Dr. Williams Commissioner Doe, and Deputy Commissioner Doe, will be dismissed without prejudice under 42 U.S.C. § 1997e(a).

### B.     The Monetary Damages – Official Capacity – NCI Claims

To the extent that Mr. Diaz seeks monetary relief from Defendants Williams, Bowles, Baymon, Commissioner Doe, and Deputy Commissioner Doe in their official capacities for violations of his First and Fourteenth Amendment rights during his confinement at NCI, those requests are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

Accordingly, the requests seeking compensatory and punitive damages from Defendants

Williams, Bowles, Baymon, Commissioner Doe, and Deputy Commissioner Doe in their official

capacities for violations of Mr. Diaz's First and Fourteenth Amendment rights that occurred

during his confinement at NCI from January to March 2020 will be dismissed under 28 U.S.C. §

1915A(b)(2).

### C.      The First Amendment – Free Exercise Claim - NCI

The First Amendment to the United States Constitution provides, in relevant part:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free

exercise thereof ...." U.S. Const. amend. I. It is well-established that an inmate has a First

Amendment right to freely exercise his or her chosen religion. *See O'Lone v. Estate of Shabazz*,

283 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment,

including its directive that no law shall prohibit the free exercise of religion.")  An inmate's First

Amendment rights, however, are "[b]alanced against ... the interests of prison officials charged

with complex duties arising from the administration of the penal system." *Ford v. McGinnis*, 352

F.3d 582, 588 (2d Cir. 2003) (internal quotation marks and citation omitted).

To state a First Amendment free exercise claim, an inmate is required to make a threshold

showing "that the disputed conduct substantially burden[ed] his sincerely held religious beliefs."

*Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).[1]  In determining whether an inmate's

---

[1]  In the last several years, the Second Circuit has recognized that a question exists as to whether an inmate must establish that the conduct of prison officials resulted in a "substantial burden" on his religious beliefs in order to state a First Amendment free exercise claim. *See Washington v. McKoy*, 816 F. App'x 570, 573-74 (2d Cir. 2020)  ("Although this Court has not yet decided whether a prisoner asserting a free exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs. . . ."); *Brandon v. Kinter*, 938 F.3d 21, 32 n.7 (2d Cir. 2019)("Our Circuit has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 887 (1990)....");

11

religious beliefs are sincere, a district court should not "evaluate the objective reasonableness of the [inmate's] belief" but consider only whether the [inmate] "sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590.

If an inmate asserts sufficient facts to state a plausible claim that prison officials engaged in conduct that burdened the free exercise of his religious beliefs, those officials then must "identify[] the legitimate penological interests that justif[ied] [their] conduct. *Salahuddin*, 467 F.3d at 275 (citations omitted). "The burden remains with the [inmate] to show that" the concerns articulated by the prison officials are "irrational." *Id.* (internal quotations omitted).

Mr. Diaz alleges that during his confinement at NCI from January to March 2020, he practiced the Santeria religion. He contends that he requires various religious items and a white robe to practice his religion but Defendants Williams, Bowles, Baymon, Commissioner Doe, and Deputy Commissioner Doe refused to provide him with these items or the white robe.

Mr. Diaz contends that cigars, a bath bucket, an altar, statutes of saints, laminated pictures of saints, natural essential oils, coconuts, fresh fruit, feathers, natural herbs, a white robe, and multi-colored beads are basic religious items "imperative" to practicing his religion. Compl. at 7 ¶ 6. During his confinement at NCI in early 2020, Mr. Diaz requested approval to purchase these and other items but Defendants Williams, Bowles, Baymon, Commissioner Doe,

---

*Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'") (quoting *Salahuddin,* 467 F.3d at 274–75 and citing *Ford,* 352 F.3d at 592 (assuming without deciding that substantial burden requirement applies)). Because the issue has not yet been squarely addressed by the Second Circuit, this Court will continue to apply the substantial burden test. *See Richard v. Strom*, No. 3:18-CV-1451(CSH), 2018 WL 6050898, at *3 (D. Conn. Nov. 19, 2018) (noting the "Second Circuit['s] uncertainty" as to whether an inmate must continue to make a "threshold showing" that the conduct of the prison official substantially burdened his or her religious beliefs, but observing that "absent instruction to the contrary, Second Circuit courts have continued to assume the validity of the substantial burden test

and Deputy Commissioner Doe refused to approve his requests.

Based on these allegations, Mr. Diaz has stated a plausible claim that these Defendants unconstitutionally and substantially burdened his right to free exercise of his sincerely held religious practices in violation of the First Amendment.

Accordingly, this claim will proceed against Defendants Williams, Bowles, Baymon, Commissioner Doe, and Deputy Commissioner Doe in their individual and official capacities.

### D.        The Fourteenth Amendment – Equal Protection Claim - NCI

The Equal Protection Clause of the Fourteenth Amendment protects individuals from invidious discrimination. It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008).

Mr. Diaz alleges that Defendants Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Commissioner John Doe, and Deputy Commissioner John Doe treated him

when addressing free exercise claims") (citations omitted).

differently than other inmates who practiced religions other than the Santeria religion.

Mr. Diaz contends Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Commissioner John Doe, and Deputy Commissioner John Doe permitted inmates who practiced other religions, such as the Native American religion and the Wicca religion, to purchase and use similar religious items in various ceremonies or rituals. These allegations are sufficient to state a plausible claim that during his confinement at NCI from January to March 2020, Defendants Williams, Bowles, Baymon, Commissioner Doe, and Deputy Commissioner Doe treated Mr. Diaz, as an adherent of the Santeria religion, differently than inmates who were adherents of other religions. **CITE**

Accordingly, this Fourteenth Amendment equal protection claim will proceed against these Defendants in their individual capacities and in their official capacities to the extent that Mr. Diaz seeks injunctive relief.

### E.      The Fourteenth Amendment – Due Process Claim - NCI

The Second Circuit has held that neither state directives nor "state statutes ... create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). Thus, allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights. *See Swift v. Tweddell,* 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established [ ] that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.") (collecting

cases); *Fernandez v. Armstrong*, 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures [set forth in Administrative Directive 9.6] is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right."). In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341–42 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")).

Mr. Diaz alleges that Grievance Coordinators Jane and John Doe failed to respond to or process the grievances that he filed regarding the denial of his requests for items that were necessary to practice his religion during his confinement at NCI from January 28, 2020 until March 8, 2020, at the latest and during his confinement at GCI from March 8, 2020, at the earlies, until July 28, 2020. He contends that the failure to act on his grievances in accordance with Department of Correction procedures violated his right to due process under the Fourteenth Amendment.

Mr. Diaz's allegations that Grievance Coordinator John Doe, NCI, and Grievance Coordinator John Doe, GCI, neglected to properly process his grievances and grievance appeals, regarding the approval of religious items necessary to practice his religion, in accordance with State of Connecticut Department of Correction Administrative Directive 9.6, do not rise to the level of a due process violation under the Fourteenth Amendment. *See Brown v. Graham*, 470 F.

App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.").

Accordingly, the Fourteenth Amendment due process claim that pertains to the processing Mr. Diaz's grievance and grievance appeals by Defendants Grievance Coordinator John Doe, NCI, and Grievance Coordinator John Doe, GCI, will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**ORDERS**

The Court enters the following orders:

**(1)**     The claims that Defendants Warden Hanna, Deputy Warden John Doe, Reverend Dr. Williams, Commissioner of Correction John Doe and Deputy Commissioner of Correction John Doe violated Mr. Diaz's First Amendment right to the free exercise of religion and his Fourteenth Amendment right to equal protection of the laws during his confinement at GCI from March through July 2020 are **DISMISSED** without prejudice for failure to properly exhaust available administrative remedies using the Department of Correction's applicable grievance procedures set forth in Administrative Directive 9.6. prior to filing this action. *See* 42 U.S.C. § 1997e(a). The requests for compensatory and punitive damages for violations of Mr. Diaz's First and Fourteenth Amendment rights during his confinement at NCI from January 2020 to March 2020 by Defendants Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Commissioner of Correction John Doe, and Deputy Commissioner of Correction John Doe in their official capacities are **DISMISSED** with prejudice under to 28 U.S.C. § 1915A(b)(2) and the Fourteenth Amendment due process claim that pertains to the processing Mr. Diaz's

16

grievance and grievance appeals by Defendants Grievance Coordinator John Doe, NCI, and Grievance Coordinator John Doe, GCI, is **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Court will permit the following claims to **PROCEED**: the claims that during Mr. Diaz's confinement at NCI from January to March 2020 Defendants Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Commissioner of Correction John Doe, and Deputy Commissioner of Correction John Doe unconstitutionally and substantially burdened Mr. Diaz's First Amendment right to practice his Santeria religion and treated Mr. Diaz, as an adherent of the Santeria religion, differently than inmates who were adherents of other religions, in violation of his Fourteenth Amendment equal protection rights. These First and Fourteenth Amendment claims will proceed against Defendants Reverend Dr. Williams, Warden Bowles, Deputy Warden Baymon, Commissioner of Correction John Doe, and Deputy Commissioner of Correction John Doe in their individual capacities and in their official capacities to the extent that Mr. Diaz seeks injunctive relief.

The Court informs Mr. Diaz that the Clerk of Court cannot effect service of the complaint on Defendant Commissioner John Doe or Deputy Commissioner John Doe in his or her individual capacity because Mr. Diaz has not provided the Court with a first or last name of either Doe defendant. Mr. Diaz will have until **February 24, 2023** to discover the first and last name of Commissioner John Doe and Deputy Commissioner John Doe and to file a notice with the Clerk of Court indicating the first and last name of these Doe Defendants. The Court will dismiss the claims asserted against any Doe Defendant for whom Mr. Diaz does not provide a first and last name within the time specified.

**(2)**    By **December 16, 2022**, the Clerk of Court shall prepare a summons form and

send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint, and a copy of this order on Reverend Dr. Williams, Warden Bowles, and Deputy Warden Baymon in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(3)     The Clerk of Court shall verify the current work addresses of Reverend Dr. Williams, Warden Bowles, and Deputy Warden Baymon and mail a copy of the Complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. By **February 03, 2023**, the Clerk of Court shall report to the Court on the status of the requests. If any Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants Williams, Bowles, and Baymon shall file their response to the Complaint, either an Answer or motion to dismiss, by **March 10, 2023**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 26, 2023**. Discovery requests need not be filed with the Court.

(6)     All motions for summary judgment shall be filed by **July 07, 2023**.

(7)     If Mr. Diaz changes his address at any time during the litigation of this case,

18

Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Diaz  should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. Diaz has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Diaz should also notify the attorney for the defendants of his new address.

   **(8)**      Mr. Diaz shall utilize the Prisoner Efiling Program when filing documents with the Court. Mr. Diaz is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on defendants' counsel by regular mail.

   **(9)**      The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

   **(10)**    **The Clerk of Court shall** send a courtesy copy of the Complaint, and this order to the Department of Correction Legal Affairs Unit.

   SO ORDERED at Bridgeport, Connecticut this 11th day of November, 2022.

                                          /s/ Victor A. Bolden_____
                                          VICTOR A. BOLDEN
                                          UNITED STATES DISTRICT JUDGE